APPEAL CASE NO.: 24-13354-D

# IN THE
# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

SPENCER SHEEHAN,
Appellant,

v.

BIG LOTS, INC.,
Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Case No.: 5:23-cv-561-GAP-PRL

## APPELLANT'S INITIAL BRIEF

SPENCER I. SHEEHAN
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Road Suite 412
Great Neck, NY 11021
Telephone: (516) 268-7080
*Pro se and counsel for Peggy Durant*

ABBYE E. ALEXANDER
**KAUFMAN DOLOWICH, LLP**
301 E Pine Street, Suite 1150
Orlando, Florida 32801
Telephone: (407) 789-0244
*Counsel for all Appellants*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Appellant, SPENCER SHEEHAN, by and through his undersigned counsel and pursuant to 11th Cir. R. 26.1-1(a) hereby state as follows:

Upon information and belief based on due diligence research performed, the following are believed to have an interest in the outcome of this case or appeal:

Big Lots, Inc.

Jacob M. Harper – Counsel for Big Lots, Inc.

Ana Morel Saruski – Counsel for Big Lots, Inc.

Heather F. Canner – Counsel for Big Lots, Inc.

Joseph Elie-Meyers – Counsel for Big Lots, Inc.

Laura Rose Handman – Counsel for Big Lots, Inc.

Matthew Ryan Tuchman – Counsel for Big Lots, Inc.

Peggy Durant

Spencer I. Sheehan

Abbye E. Alexander – Counsel for Appellants

Kaufman Dolowich, LLP – Counsel for Appellants

Sheehan & Associates, PC – Pro se counsel for Appellants

*/s/ Abbye E. Alexander, Esq.*

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant believes that oral argument would be helpful to the Court to understand why the amount of attorney's fees awarded in this case by the District Court constitute an abuse of discretion and are clearly erroneous.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT (CIP) ..................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS....................................................................................... ivi

TABLE OF AUTHORITIES ................................................................................ vi

JURISDICTIONAL STATEMENT ................................................................... viii

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................1

STATEMENT OF THE CASE ..............................................................................2

      Allegations of the Peggy Durant Complaint Against Big Lots, Inc................2

      Big Lots, Inc. Motion to Dismiss ...................................................................4

      Big Lots, Inc.'s Motion for Sanctions and Fees ............................................5

      The District Court Hears Oral Argument on the Motion for Sanctions .........6

      The District Court Awards Defendant 100%
      of their Attorney's and Costs "against *Plaintiff's counsel"* ...........................7

ARGUMENT .........................................................................................................9

    I.     Standard of Review ...........................................................................9

    II.    Summary of Argument ....................................................................10

    III.   The Amount of Attorney's Fees and Costs Awarded was For
          Excessive Redundant, and Unreasonable Hours Expended............10

    IV.   The Hourly Rate that Defendant was Awarded is Far Above the
          Prevailing Market Rates for the Middle District ........................... 14

V.     Sanctioning Plaintiffs' Counsel 100% of the Defendants'
Attorneys' Fees Can Only Be Explained as Punishment ...................17

CONCLUSION .....................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS .........19

CERTIFICATE OF SERVICE ..............................................................20

# TABLE OF AUTHORITIES

*Cases*

*Am. Civil Liberties Union of Georgia v. Barnes*
    168 F.3d 423 (11th Cir. 1999)..........................................................10,11,15

*Austin v. United States*
    509 U.S. 602, 610 (1993) ............................................................17

*Brooks v. Georgia State Bd. Of Elections*
    997 F.2d 857 (11th Cir. 1993) ........................................................9

*Cullens v. Georgia Dep't. of Transp.*
    29 F.3d 1489, 1494 (11th Cir. 1994) ..........................................16

*Gray v. Lockheed Aeronautical Sys. Co.*
    125 F.3d 1387 (11th Cir. 1997) ......................................................9

*Hensley v. Eckerhart,*
    461 U.S. 424, 434 (1983) ............................................................10

*In re Hillsborough Holdings Corp.*
    127 F.3d 1398 (11th Cir. 1997) ......................................................9

*LC Tech. Int'l, Inc. v. MediaRECOVER, LLC,*
    No. 8:03-CV-2493-T-MAP, 2007,
    WL 9723495, at *2 (M.D. Fla. Sept. 11, 2007)............................13

*Loranger v. Stierheim,*
    10 F.3d 776 (11th Cir. 1994) ........................................................9

*Norman v. Hous. Auth. of City of Montgomery,*
    836 F.2d 1292, 1303 (11th Cir. 1988)........................................9,10,11,12,13

*Rizzo-Alderson v. Eihab H. Tawfik, M.D., P.A.,*
    5:17-CV-312-OC-37PRL,
    2019 WL 3323432 (M.D. Fla. July 24, 2019)..............................14

*Santini v. Cleveland Clinic*
    232 F.3d 823, 825 n.1 (11th Cir. 2000) ........................................................ viii

*United States v. Bajakajian,*
    524 U.S. 321, 334 (1998) .......................................................................17

**Statutes and Rules**

28 U.S.C. § 1338(a) ............................................................................. viii
28 U.S.C. §1291 ............................................................................. viii,8
Fla. Stat. section 817.41 ...................................................................3
Fla. Stat. section 501.201 ...................................................................3

# JURISDICTIONAL STATEMENT

Appellant, Spencer I. Sheehan, appeals the final decision of the district court entered September 25, 2024, sanctioning the plaintiff in the case below styled *Peggy Durant and Spencer Sheehan v. Big Lots, Inc.,* in the Middle District of Florida, Case No. 5:23-cv-561-GAP-PRL, that awarded appellees Big Lots, Inc. the amount of $144,047.00 "against *Plaintiff and her attorney*." The federal courts have jurisdiction of this case pursuant to 28 U.S.C. § 1338(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the order on appeal assessed the amount of the sanction and "leaves nothing for the court to do but execute the judgment." *Santini v. Cleveland Clinic,* 232 F.3d 823, 825 n.1 (11th Cir. 2000).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The District Court's Order on appeal granted the Defendant's Motion for Sanctions and fees after Plaintiff's Complaint was dismissed after the court granted Defendant's Motion to Dismiss. The order determined that "Sheehan submitted bad faith filings here, made incredulous allegations, and pursued meritless claims[.]" (D.E. 52). The order awards Defendant 100% of their lodestar amount for attorney's fees and costs while denying Defendant the requested lodestar enhancement. (D.E. 52). The conclusion recites that "Plaintiff **and her attorney, Spencer I. Sheehan**, are liable for the lodestar amount of **$144,047**" (D.E. 52) (emphasis added).

The District Court's order must be vacated and the sanction award against counsel expunged because (1) awarding Defendant one hundred percent of their attorneys' fees and costs incurred for defense of the case without reducing the hourly rate and without apportioning out the amount unrelated to any alleged excess proceedings was clearly erroneous and an abuse of discretion.

## STATEMENT OF THE CASE

The Appellant, Spencer Sheehan, is former counsel for Plaintiff, Peggy Durant, in the case below styled *Peggy Durant and Spencer Sheehan v. Big Lots, Inc.*, filed in the Middle District of Florida, Case No. 5:23-cv-00561-GAP-PRL.

### Allegations of the Peggy Durant Complaint Against Big Lots, Inc.

On September 11, 2023, Peggy Durant filed a Complaint against Big Lots, Inc. Defendant is an Ohio corporation with over 1,400 stores and has its principal place of business in Ohio. Defendant sells a wide assortment of brand-name and private label items, such as food, furniture, seasonal items, electronics and accessories, home decor, toys, and gifts. One of Big Lots' private label brands is Fresh Finds which includes a ground 100% Arabica Medium-Dark Roast Colombian Coffee in cans of 24.2 oz (686g) (the "Product").

Plaintiff's complaint alleged that she purchased the Product at issue because she expected it could make the number of cups promised on the label, or a small number above or below that stated number. The Complaint further alleges that the Product made false and misleading representations about the number of cups that the Product could make and that, without these false and misleading representations, Plaintiff would not have paid as much or would not have bought the Product. (D.E. 1).

Durant's claim is related to the packaging that outlines the serving size, the brewing instructions, and an estimate of how many servings the Product should yield. The point of contention is that the Product stated on its packaging that it would provide "up to 210 suggested strength 6 fl oz servings," following the printed brewing instructions. Durant alleged that through independent laboratory analysis, it was revealed that the Product could only make 152 6 fl oz servings when the brew instructions were followed. The lab analysis yielded 58 fewer servings than the 210 listed on the container, a difference of twenty-eight (28) percent. The complaint alleges that no reasonable consumer will expect the number of cups to be closer to 150 than 210. (D.E. 1).

Durant alleged that Defendant failed to accurately calculate, disclose, measure and/or verify the number of servings and/or cups based on the Product's contents and preparation instructions. The Complaint further alleged that through this deceptive and misleading representation that Defendant violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Based on the factual allegations in the Complaint, Plaintiff asserted four counts against Big Lots, Inc. Count I alleged a violation of Fla. Stat. section 501.201, which deals with the Florida Deceptive and Unfair Trade Practices Act based on Defendant's false and misleading representations (D.E. 1 at 10); Count II alleged a violation of Fla. Stat. section 817.41 False and Misleading Adverting (D.E. 1 at 11-

12); Count III alleged breach of warranty (D.E. 1 at 12-14); and Count IV alleged fraud (D.E. 1 at 14-17).

## Big Lots, Inc. Motion to Dismiss

On January 12, 2024, Big Lots, Inc., filed their Motion to Dismiss the Complaint. (D.E. 11). The motion argued that the Complaint was an attempt to relitigate an already rejected mislabeling of claims. Further the motion argued that Counts I, II, and IV failed to plead a specific time, place, and location of the deceptive statements pursuant to Federal Rule of Civil Procedure 9(b), that the Count IV of Fraud is barred by the economic loss rule, and that Count III of breach of express warranty failed to allege pre-suit notice per Florida Law.

The motion further argued that as a matter of law their labeling is not deceptive nor would it mislead the reasonable consumer and that the complaint did not allege a false, deceptive, nor misleading statement.

Durant and Sheehan opposed the motion. (D.E. 21). Durant argued that FDUTPA and false advertising claims are not subject to rule 9(b)'s heightened pleading standards because the necessary specifics were stated. (D.E. 21 at 9). Further, Durant argued that the specific language of "up to 210" cups if "brewed instructions" were followed was deceptive because "the impression created by the representation" had the "capacity to convey misleading impressions to consumers even though non-misleading interpretations may be possible." (D.E. 21 at 11-12).

Though there may have been alternative brewing instructions, Durant brought suit for the impression that the first brewing instructions created as far as it pertains to yielding up to 210 cups. The opposition to the motion also argued that the Product's label failed to disclose which brew instructions would yield "up to 210" cups, or close to 210. (D.E. 21 at 12). Further, Durant also argued that the disparity between the "up to" amount and the actual amount results in deception, is a question of fact (D.E. 21 at 14). On the false advertising claim, Durant argued that there were sufficient specifics in the Complaint that would not warrant the dismissal of the Complaint. (D.E. 21 at 16-17).[1]

The Court granted Defendants' Motion to Dismiss on May 1, 2024. (D.E. 29).

## Big Lots, Inc.'s Motion for Sanctions and Fees

Four months later, on May 15, 2024, Defendant filed its motion for "Attorney Fees and Costs." (DE 35). The motion argued that it is mandated that the court should allow Defendant as the prevailing party to recover reasonable attorney's fees. (DE 35 at 9). The motion further argued that the court should use its discretion to enter the fees against Spencer Sheehan alleging bad faith in bringing Durant's claims. *Id*.

---

[1] Notably, Big Lots, Inc. never served Durant or Durant's counsel, Spencer Sheehan with a Rule 11 motion. Apparently, the Defendants did not believe that Durant's Complaint rose to the level of a baseless filing.

Defendant's motion asserted that not only would this recompense Big Lots, but it was also the only way to deter Sheehan from the alleged bad faith behavior. Big Lots' Motion for Attorney Fees and Costs asserts that the reasonable attorney's fees would be no less than $135,000. *Id*.

Durant opposed the Motion (D.E. 37). Durant argued that the claims were not frivolous as there was a reasonable factual basis to assert them based on the language of the Product and the Product's actual output. As far as the fees, the response in opposition to the Motion argues that the requirements of due process for Sheehan were not properly satisfied.

### The District Court Hears Oral Argument on the Motion for Sanctions

On June 26, 2024, the District Court held oral argument on the Motion for Sanctions. (D.E. 45). The transcript reflects that beginning at 3:30 pm that day counsel for the defendants presented his argument to the Court.

Thereafter, both William Wright and Spencer Sheehan, as counsel for Durant rose to speak. Wright clarified that he was always lead counsel on the case and sought to explain to the Court any discrepancies that occurred during the pleadings (D.E. 45 at 6-7). Sheehan also spoke and made clear that he always deferred to Wright for any filings in this matter. (D.E. 45 at 11). Further, Sheehan apologized for any unintentional mishaps that occurred in the judicial process and represented that nothing improper was done intentionally (D.E. at 10). The court also listened to

Big Lots' rebuttal that asked for discovery into the relationship of both counsels for Durant (D.E. 45 at 15).

The court at the conclusion of the hearing decided that fees would be awarded and that there was no need for discovery. The court then issued a written order that encompassed the decision to grant the Motion and imposed sanctions against Plaintiff's counsel, Sheehan (D.E. 44).[2]

### The District Court Awards Defendant 100% of their Attorney's and Costs  "against *Plaintiff's counsel*"

On September 25, 2024, the district court entered the Order Granting Big Lots' Motion for Sanctions and Fees. (D.E. 52). The Order rationalizes the fee amount presented by Defendant, citing the expert testimony of another attorney as part of the reason for the determination. The order also further outlines that the Court believed that Sheehan was engaging in "self-serving" conduct in this matter.

Specifically, the Court agreed with the hours expended and the hourly rate. The District Court agreed with Defendant that time entries such as "worked on motion to dismiss," "prepare motion to dismiss," or "revise motion to dismiss" in large time blocks were somehow appropriate billing that warrants the number of

---

[2] The Court's Order issued sanctions against Sheehan and further issued an Order to Show Cause to William Wright, Sheehan's co-counsel, as to why sanctions should not be extended to him.  Wright responded and the Court later disposed of the Show Cause Order (D.E. 50).

hours reported. (D.E. 52 at 20-22). Further, the district court agreed with Defendant that their hourly fee is not excessive despite the acceptable rate in Ocala, where the matter was filed, being substantially lower than what Defendant asked for.

The order did, however, deny the lodestar enhancement due to this matter not being contingency based and therefore the public policy reasoning for the multiplier.

The order's conclusion recites:

> [i]t is therefore ORDERED that Defendant's Supplemental Motion on Amount of Attorney's Fees and Costs is hereby GRANTED in part and DENIED in part. The Motion is GRANTED to the extent that Plaintiff and her attorney, Spencer I. Sheehan, are liable for the lodestar amount of $144,047, but the motion is DENIED with respect to the requested lodestar enhancement.

On October 11, 2024, Spencer Sheehan filed a Notice of Appeal of the District Court Order.[3] (D.E. 54). Durant did not appeal. No new counsel appeared for Durant in this case.

---

[3] The District Court Order is a final appealable decision under 28 U.S.C. §1291 because it assessed the amount of the sanction and "leaves nothing for the court to do but execute the judgment," as distinguished from an order granting a motion for attorneys' fees but leaving the amount of the fees unresolved and unfixed.

## ARGUMENT

## I.       Standard of Review

A district court's order awarding attorney fees is reviewed for an abuse of discretion. *See, e.g., Gray v. Lockheed Aeronautical Sys. Co.,* 125 F.3d 1387, 1389 (11th Cir. 1997). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Hillsborough Holdings Corp.,* 127 F.3d 1398, 1401 (11th Cir. 1997) (internal citation and quotation omitted). "Although a district court has wide discretion in performing these calculations," *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994), "[t]he court's order on attorney [ ] fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1304 (11th Cir. 1988).

Additionally, an appellate court must be mindful that, "[a]lthough an attorney[ ] fees award is reviewed for abuse of discretion, the determination of what constitutes a reasonably hourly rate is a finding of fact subsidiary to the total award and is therefore reviewed under the clearly erroneous standard." *Brooks v. Georgia State Bd. of Elections,* 997 F.2d 857, 868 (11th Cir.1993) (quoting *Turner v. Secretary of the Air Force,* 944 F.2d 804, 808 (11th Cir.1991)).

## II.    Summary of Argument

The district court's Order granting, in part, Defendant's Supplemental Motion on Amount of Attorney's Fees and Costs and awarding Defendant's $144,047 in fees must be reversed, as the fee award is excessive, unreasonable, and unsupported. Specifically, the hourly rates sought by Defendant's counsel are well above the prevailing market rate for this district and Defendant has failed to put forth sufficient justification to deviate from the prevailing market rate. In addition, Defendant's counsel improperly block billed multiple tasks, resulting in unclear billing amounts for the tasks at hand. Simply put, the Defendant billed over 180 hours for the filing and argument of two motions, which the District Court erroneously deemed to be reasonable.

As such, the District Court's Order must be reversed and vacated.

## III.    The Amount of Attorney's Fees and Costs Awarded was For Excessive Redundant, and Unreasonable Hours Were Expended

It is well settled that fee applicants may not seek hourly fees which would be unreasonable to bill to the client. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). Hours which are "excessive, redundant, or otherwise unnecessary" should be excluded from the amount which a party claims. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Redundant hours "generally occur where more than one attorney represents a client." *Am. Civil Liberties Union of*

*Georgia v. Barnes*, 168 F.3d 423, 432 (11th Cir. 1999) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). While there is nothing unusual about a client having multiple attorneys working on their case, the fee applicant has the burden of proving the "distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Id.* In *Barnes*, the court held that the hours of two attorneys, for a total of 111.62 hours, should have been excluded because they failed to describe the distinct contribution of each attorney. *Id.* at 433.

Here, Defendant contends that the hours they expended are somehow reasonable for the Motion to Dismiss and the Motion for Sanctions. Defendant had a total of three attorneys drafting its Motion to Dismiss. Even more, Defendant had four attorneys drafting its Motion for Sanctions. For the Motion to Dismiss, Defendant's breakdown of the fees asserts that attorneys J. Harper, H. Canner and J. Elie-Meyers assisted in drafting the Motion. Specifically, J. Harper expended 32.4 hours, H. Canner expended 28.5 hours, and J. Elie-Meyers expended 60.9 hours just while drafting this Motion. Defendant failed to assert the distinct tasks of each attorney while drafting these Motions. Instead, there are multiple entries from the three attorneys which simply state "worked on motion to dismiss", "prepare motion to dismiss", or "revise motion to dismiss". These entries account for 60 hours of the motion to dismiss preparation with no explanation as to the specific tasks each

attorney completed. Further, this Motion largely relied on a similar New York matter in which both Sheehan and Defendant's counsel served as the attorneys of record. This case was *Devey v. Big Lots, Inc.*, New York Western District Court, Case Number 6:21-CV-06688. Big Lots, through argument that the cases were the same, implicitly conceded that their Motion is in fact largely similar, thereby cutting against the reported hours for the work done on their Motion to Dismiss.

The District Court too, errs on this issue. Specifically, the Court justifies its award against Sheehan by stating:

> This Court finds, based on its own knowledge and expertise, that the 121.8 hours Defendant's counsel spent on its Motion to Dismiss and the 60.6 hours it spent on its Motion for Attorney's Fees are reasonable given the novelty and difficulty presented by aggressively defending Sheehan's frivolous lawsuit—for the second time. *See Norman*, 836 F.2d at 1303. The time and labor described in significant detail by Defendant's counsel in their Supplemental Motion does not exceed that required for a case of this magnitude. (D.E. 52 at 13)

However, the Court also acknowledges that the *Devey* case was indistinguishable from the present matter, stating:

> *Devey*, indistinguishable from the instant matter but for a new plaintiff and heading, was dismissed after the court recognized that the claims were "based on a selective reading of the brewing instructions."9 635 F.Supp.3d at 212. Recognizing the same glaring pitfall that this Court did, the Devey court further noted that, "by focusing solely on the instructions for brewing a single serving, plaintiff's calculation completely overlooks the brewing instructions

on the label for larger batches, which offer a significantly higher potential yield. (D.E. 44 at 12).

Given the Court acknowledges that this matter and the New York matter are nearly identical in both facts and arguments, and the Defendant's filed a motion to dismiss in both cases, there is no reasonable basis to support the billing of 121 hours on this matter. A fact which the District Court simply ignores.

As for the Motion for Sanctions, J. Harper expended 11.7 hours, H. Canner expended 29.5 hours, J. Elie-Meyers expended 1.55 hours, and E. Parsons expended 17.85 hours. According to Defendant's breakdown of hours, 25.15 hours were spent strictly drafting and revising the Motion for Sanctions by J. Harper, H. Canner, and E. Parsons. Again, through the redundant nature of the billing, there is no distinction or explanation as to what the attorneys were working on, aside from a broad statement of drafting or revising the Motion. The hours allegedly expended here are clearly redundant and do not indicate any distinct contribution from each attorney. On its face, without clear distinction from the fee applicant, the hours expended are excessive and redundant and should be decreased by this Court.

Under Eleventh Circuit law, while a federal court is not required to hold an evidentiary hearing to decide a motion for attorney's fees, the Court must still rely on its own expertise in determining what constitutes a reasonable and proper fee. *See LC Tech. Int'l, Inc. v. MediaRECOVER, LLC*, No. 8:03-CV-2493-T-MAP, 2007 WL 9723495, at *2 (M.D. Fla. Sept. 11, 2007), citing *Norman*, 836 F.2d at 1303.

The key here is that it must be a "reasonable and proper fee". Here, no such reasonableness can be found as the hours expended, and the explanations provided for those hours, are clearly in excess to what is required to draft two motions. The district court's findings as to this issue are clearly erroneous and should be reversed.

### IV. The Hourly Rate that Defendant was Awarded is Far Above the Prevailing Market Rates for the Middle District

When determining a "reasonable" hourly rate, courts must look to the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonable comparative skills, experience, and reputation." *Rizzo-Alderson v. Tawfik*, 5:17-CV-312-OC-37PRL, 2019 WL 3324298 (M.D. Fla. July 1, 2019), report and recommendation adopted sub nom. *Rizzo-Alderson v. Eihab H. Tawfik*, M.D., P.A., 5:17-CV-312-OC-37PRL, 2019 WL 3323432 (M.D. Fla. July 24, 2019).

Generally, the relevant market is the location of where the case is filed. *Id* at 2. Further, the fee applicant bears the burden of establishing the market rate in the relevant locality. *Id*. The fee applicant must present the court with "specific and detailed evidence" to support their asserted market rate. *Id*. For the Ocala Division of the Middle District specifically, courts have held that a $500 hourly rate for a partner is higher than the market rate. *Id* at 3. The court in *Tawfik*, supported their decision with numerous cases which resulted in a reasonable hourly rate of between

$250 and $375. *Id.* These amounts apply to attorneys with 10 or more years of experience in their respective fields. *Id.*

Defendant is seeking attorney's fees for J. Harper, partner, at an hourly rate of $825/$950; H. Canner, counsel, at an hourly rate of $715/$815; J. Elie-Meyers, associate, at an hourly rate of $645/$725, and E. Parsons, associate, at an hourly rate of $625. Here, counsel's rates are between 2 and 3 times more than the prevailing market rate. Defendant admits to these rates as being higher than the prevailing market rate in its Supplemental Motion [D.E. 46], using *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999) to support this assertion. Specifically, Defendant states, "Such rates are justified where, as here, counsel based in another market has extensive prior experience with a particular factual situation that allow it to create savings and efficiencies for their client." [D.E. 46] However, in its decision, the *Barnes* court stated:

> We do not rule out the possibility that there *might* be a case where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation *could* be justified because of efficiencies resulting from that prior experience. That could be reasonable and cost-sensible, especially if it resulted in lower costs than would otherwise be necessary.

*Barnes*, 168 F.3d at 438, emphasis added.

The *Barnes* court continued to reason that due to the "excessive, redundant, or otherwise unnecessary" hours, "any finding that savings or efficiencies resulting

from the use of non-local counsel in this case would be clearly erroneous." *Id*. Put differently, the prevailing market rate was the correct rate due to the attorney's excessive, redundant, or otherwise unnecessary billing practices.

Furthermore, if a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims. *See Cullens v. Georgia Dep't. of Trans*p., 29 F.3d 1489, 1494 (11th Cir. 1994) (upholding decision to award non-local rates based on the district court's finding that there were no local attorneys who could have handled the case).

In this case, the district court itself acknowledges that the Defendant's rates are roughly 25% higher than comparable counsel in the major legal markets in the Middle District of Florida (D.E. 52 at 18). However, despite this, the Court states that "extenuating circumstances warrant Defendant's higher rates. (D.E. 52 at 19). However, absent from these "extenuating circumstances, is any testimony or statement from Defendant that it was unable to retain an attorney within the Middle District of Florida who was willing and able to handle its claims.

The mere fact that Defendant's California counsel provided alleged special expertise to the case does not show that there were no Middle District attorneys who were willing and able to provide comparable expertise. A prevailing party is not entitled to have the losing party pay for an attorney with the most expertise on a

given legal issue, regardless of price, but only for one with reasonable expertise at the market rate. And "market rate" means the hourly rate charged in the local legal market by someone with expertise in the area who is willing and able to take the case, if such an attorney exists. *Barnes*, 168 F.3d at 437.

Defendants' counsels' rates are excessively high in comparison to the local rate with no reasonable justification. As such, the district court's award of 100% of the Defendant's counsel's hourly rate was both clearly erroneous and an abuse of discretion.

## V.     <u>Sanctioning Plaintiffs' Counsel 100% of the Defendants' Attorneys' Fees Can Only Be Explained as Punishment</u>

The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing excessive fines as punishment; civil sanctions fall within the scope of the amendment. See *Austin v. United States*, 509 U.S. 602, 610 (1993). If a civil sanction "can only be explained as serving in part to punish," then the fine is subject to the Eighth Amendment. *Austin*, 509 U.S. at 610. If the civil penalty is punitive and thus subject to the Eighth Amendment, it will be found constitutionally excessive if it is "grossly disproportional to the gravity of [the] offense." *United States v. Bajakajian,* 524 U.S. 321, 334 (1998).

The entry of the award of 100% of the Defendants' attorneys' fees costs "*against counsel*" was punishment pure and simple. Punishment for what is unclear and unstated, thus the award is constitutionally defective.

## CONCLUSION

The District Court's order awarding Defendant one hundred percent of their attorneys' fees and costs incurred for defense of the case without reducing the hourly rate and without apportioning out the amount unrelated to any alleged excess proceedings was clearly erroneous and an abuse of discretion. As such, the Order should be reversed, vacated, and the sanction against counsel expunged.

Dated: December 9, 2024

Respectfully submitted,

**KAUFMAN DOLOWICH, LLP**

*/s/ Abbye E. Alexander*
Abbye E. Alexander, Esq.
Florida Bar No.: 662348
orlandopleadings@kdvlaw.com
KAUFMAN DOLOWICH, LLP
301 E Pine Street, Suite 1150
Orlando, FL 32801
Tel: (407) 789-0244
Fax: (888) 502-6353
*Counsel for Appellant, Spencer Sheehan*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.  This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 4,895 words.

2.  This document complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word v. 2208 with Times New Roman size 14.

*/s/ Abbye E. Alexander, Esq.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of December, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Abbye E. Alexander, Esq.*